COMMERCIAL INVESTMENT TRUST, INC., v. J. S. WINDSOR, AND JOHN P. BISHOP, JOHN F. FULTON, AND REX F. BISHOP, COPARTNERS TRADING AS "THE MOTOR COMPANY."

(Filed 15 May, 1929.)

1. **Bills and Notes I c—Rights and liabilities of parties upon certification of check.**

A drawer of a check by having the drawee bank certify it before delivering it to the payee of the check does not change the status of his liability thereon, the effect being to add the credit of the bank to that of his own; but it is otherwise if the payee of the check accepts it uncertified and then has it certified by the drawee bank instead of presenting it for payment, for then the credit of the bank is substituted for that of the drawer of the check and the liability of the latter on the check he has issued ceases. C. S., 3115.

2. **Same—Conflicting evidence as to whether certification was made by drawer or payee should be submitted to jury.**

Where the evidence is conflicting as to whether the drawer of a check has it certified at the drawee bank or whether this was done by the payee thereof or his agent, a peremptory instruction that the drawer of the check was relieved from liability is reversible error, the issue being for the determination of the jury under proper instructions.

3. **Payment A b—Where check given for prior installment is returned unpaid without knowledge of agent receiving check certified by drawer for full balance, drawer not relieved of liability.**

Where the defendant purchased an automobile through a local dealer under a title retaining contract securing notes for monthly payments and was sued thereon by the financing corporation claiming as a holder in due course for value, and the defense of payment was pleaded with evidence tending to show that the defendant made payment by certified check given by his agent to the agent of the plaintiff for the full balance due by the defendant, and that the check was rejected by the plaintiff on account of a check given for a prior installment having been returned unpaid, and the rejected check was returned to the defend-

ant's agent and credited to his account, and the evidence as to whether the check was certified by the drawer or the payee was conflicting: *Held*, a peremptory instruction that the drawer of the check would be relieved of liability in the absence of a new contract or understanding was reversible error to the plaintiff's prejudice.

APPEAL by plaintiff from *Clement, J.*, at January Term, 1929, of GUILFORD. New trial.

Action to recover an amount alleged to be due on a note and to subject personal property to the payment of the amount due. The defendant Windsor purchased from his codefendant, The Motor Company, an Oakland automobile, and as evidence of and to secure the purchase price executed and delivered to The Motor Company the following promissory note:

"$876.00                                    Greensboro, N. C., 8/14/24.

After date, I, we, or either of us, promise to pay to The Motor Company or order, in twelve equal monthly installments of $73.00 each, the first payable one month after date, eight hundred seventy-six and 00/100 dollars with interest from maturity at the highest lawful rate.

And if allowed by law, 15 per cent of the principal and interest of this note as attorney's fees, if placed in the hands of an attorney for collection, and authority is given, irrevocably to any attorney at law to appear for me in any court, and waive the issue and service of process and confess a judgment against me in favor of the holder hereof, for such amount as may appear to be unpaid hereon after maturity, together with costs and attorney's fees, and to release all errors and waive all right to appear. Value received without relief under any exemption or insolvency law. Upon nonpayment of any installments at its maturity all remaining installments shall become immediately due and payable.

Negotiable and payable at the office of Commercial Investment Trust, Incorporated, 41 East. Forty-second Street, New York City, with exchange on New York.

                                    (Signed) J. S. WINDSOR."

Contemporaneously with the execution of the note, Windsor and The Motor Company signed a conditional sales contract, by the terms of which Windsor purchased and The Motor Company sold the automobile, the seller retaining title until all the terms of the note and the contract were complied with. Immediately after the execution of these papers they were endorsed and assigned to the plaintiff, who claims to be a holder in due course. On the date they were transferred The Motor

Company guaranteed the payment of the note, waived demand, protest, and notice of protest for nonpayment. In a separate written instrument dated 11 September, 1923, The Motor Company had guaranteed the prompt and faithful discharge of all its present and future liabilities and obligations to the plaintiff growing out of the purchase of its notes— the agreement being continuous and applying to transactions taking place between The Motor Company and the plaintiff after the execution of the paper.

The plaintiff caused the car purchased by Windsor to be seized under proceedings in claim and delivery and it was sold by the sheriff at public auction at the price of $460. The defendants contended that the full amount due on the note in question was paid to the plaintiff prior to the institution of the action. Issues were submitted to the jury and answered as follows:

Is the plaintiff the owner and entitled to the possession of the automobile as alleged in the complaint? Answer: No.

What was the market value of said automobile at the time it was taken by order of claim and delivery? Answer: $700 (and interest from 12 May, 1925).

In what amount, if any, are defendants indebted to plaintiff? Answer: None as to J. S. Windsor. $438 (and interest from 10 April, 1925) by John P. Bishop, John F. Fulton, Rex F. Bishop, trading as The Motor Company.

It was adjudged upon the verdict that the defendant Windsor recover of the plaintiff and the U. S. Fidelity and Guaranty Company as surety upon his bond the penal sum of $1,000 to be discharged upon payment to the defendant Windsor of the sum of $700 with interest as therein provided and that the plaintiff recover of The Motor Company $438 with interest from 19 October, 1925, and the cost of the action. Plaintiff excepted and appealed upon error assigned.

*Shuping & Hampton for plaintiff.*
*Harry R. Stanley for defendants, Rex. F. Bishop and John F. Fulton.*
*Frazier & Frazier for J. S. Windsor.*

ADAMS, J. The defendant Windsor bought an Oakland automobile from his codefendants, The Motor Company, and to secure a part of the purchase price executed the note in controversy and the conditional sales contract. Immediately after they were signed these papers were duly endorsed and transferred to the plaintiff. The note, which was payable in twelve monthly installments, contained a provision that upon nonpayment of any installment at its maturity all remaining in-

stallments should then become due. The plaintiff alleged that Windsor had made default in the payment of four successive installments and by letting one of his checks be protested had incurred an additional liability of one dollar and fifty cents. In virtue of the maturing clause the plaintiff brought suit to recover $512.50 with interest, the whole amount claimed to be unpaid. The only answer filed was that of Windsor, who alleged that the note sued on had been fully paid and satisfied before the summons was issued. The plea of payment was controverted, and as to this defense the evidence tended to show the following circumstances: In the latter part of March, 1925, J. W. Holman, who was in the service of the plaintiff, in consequence of a demand made on John P. Bishop, for payment of the note held by the plaintiff, received from Bishop a check in the sum of $438, which the plaintiff refused to accept. Holman made a second demand for payment on 10 April, 1925. Windsor then paid Bishop $438 and Bishop gave to Holman a check which with the endorsement is as follows:

"GREENSBORO NATIONAL BRANCH

AMERICAN EXCHANGE NATIONAL BANK, GREENSBORO, N. C.

10 April, 1925.

Pay to the order of Commercial Investment Trust, Inc., $438.00—not over four hundred thirty-eight dollars and no cents not over.

UNITED MOTOR SALES.

By Jno. P. Bishop.

Acct. No. 227912—14-E

Payment in full note J. S. Windsor, and check previously given on same. . . . And certified as follows:

Certified. Good when properly endorsed. Greensboro National Branch, American Exchange National Bank, Greensboro, N. C. $438.00.

I. F. PEEBLES, *Cashier."*

And endorsed on back as follows:

"For deposit only pay to the order of any bank, banker, or trust company.                    COMMERCIAL INVESTMENT TRUST."

The bank charged the check to the account of Bishop, or the United Motor Sales. Holman sent the check to the plaintiff and a clerk in the plaintiff's office stamped the last endorsement on the back of the paper. The plaintiff seeing that the check fell short of the remainder due on the note, sent it back to Holman. Holman turned it over to Bishop, telling him that it could not be accepted in full payment of the note because a check given by Windsor on one of the installments had been

returned unpaid, and that to the $438 for which the check was given must be added the unpaid installment ($73 and $1.50, protest fee), making a total unpaid indebtedness of $512.50. The check was returned to the bank by Bishop and was credited on the account of the United Motor Sales; it was never paid to the plaintiff.

There are a number of exceptions to the charge, but in our view of the case it is necessary to consider only the one which was taken to the following instruction: "But if you find that Holman, the agent of the company, took this check from this defendant Windsor, or that he had Windsor to execute this check to Bishop, and that the check was then taken at the request of Holman to the bank and certified, and that he received that check he would be receiving the check from Windsor, and that after the check was certified, that unless he made a new contract or had a new understanding with Windsor about the matter, then Windsor would be relieved from further liability."

This part of the charge is subject to criticism. There is evidence tending to show that when Holman called on the defendants for a settlement he did not have the note, but, according to the testimony of Windsor, only "a duplicate record of the balance due," and that when Holman received the certified check there was due the plaintiff, in addition to the $438 for which the check was given, an unpaid installment of $73 and protest charges of $1.50, making a total of $512.50. It may plausibly be contended that Windsor at that time had knowledge of his unpaid installment and of the charges for his protested check and that Holman did not. At any rate the certified check was not accepted by the plaintiff because, as insisted, it was insufficient to cancel the note; it was returned by the plaintiff to Bishop whose bank account, or that of the company he represented, was then credited with four hundred and thirty-eight dollars. The plaintiff has never received the proceeds of the certified check. Under these conditions was Windsor necessarily relieved of liability for the want of a new contract or a new understanding between him and the plaintiff or the plaintiff's agent?

As to the certification of the check the evidence is conflicting. Holman testified that he procured the certified check from Bishop; that Bishop had it certified and gave it to him. Windsor said on his cross-examination that he gave the money to Bishop; that Holman wanted a certified check; that Bishop gave him a check and had it certified. He said also that "they (Bishop and Holman) went to the bank and had it certified"; but he did not go with them and did not know what occurred there. In another part of his testimony Windsor said he paid Holman. The cashier did not remember who was with Bishop when the check was certified. In this conflict of testimony it will be observed that the in-

struction excepted to is based upon these hypotheses: (1) that Holman as agent of the plaintiff received the check from Windsor; *or* (2) that he had Windsor to make the check to Bishop; and (3) that the check was then taken to the bank at the request of Holman and certified, and that "he received it in that manner." The first and second of the hypothetical findings are disjunctive, and there is no evidence to support the second. The language is susceptible of the interpretation that if Windsor deposited $438 with Bishop and the United Motor Sales through the agency of Bishop drew its check for this sum and Bishop had the check certified at the request of Holman and then delivered the check to Holman, Windsor would be released from liability to the plaintiff unless a new contract was made. The jury may have understood this to be the meaning; if so, they may have been misled as to the law. The drawer of a check may have it certified before it is delivered to the payee; he may deliver it without certification and the payee may then have it certified for his own benefit. In the latter case the liability of the drawer is not the same as in the former. The distinction is thus pointed out in 5 R. C. L., 524: "When a check payable to another person than the drawer is presented by the drawer to the bank for certification, the bank knows that it has not been negotiated, and that it is not presented for payment, but that the drawer wishes the obligation of the bank to pay it to the holder when it is negotiated, in addition to his own obligation; but when the payee or holder of a check presents it for certification the bank knows that this is done for the convenience or security of the holder. The holder may demand payment if he choose, and it is only because, instead of payment, the holder desires certification, that the bank certifies the check instead of paying it. In one case the bank certifies the check for the use or convenience of the drawer, and in the other for the use or convenience of the holder. If the drawer delivers the check already certified the relations, duties, and obligations between him and the payee or holder are the same as if such check had not been certified. It is otherwise where the check is delivered without certification, and the holder, instead of presenting it for and receiving payment, presents and procures it to be certified. When the drawer of a check procures its certification before delivering it to the payee, this does not discharge him. He remains the creditor of the bank, and still liable to the holder of the check for the amount thereof. The bank, by certifying the check, becomes liable for the amount thereof, but the drawer may nevertheless be held in case the holder exercises due diligence in presenting the check to the bank for payment and giving notice of the dishonor. The only effect of a certification obtained by the drawer is to give additional currency by adding to his credit

the credit of the drawee bank; the bank thereby becomes bound, but beyond that nothing is added to the legal force or effect of the instrument." C. S., 3115.

This statement of the law is sustained in cases which are assembled in the annotation of *Blake v. Hamilton Dime Sav. Bk. Co.,* 128 A. S. R., 684, 696; *First Nat. Bank v. Currie,* 9 L. R. A. (N. S.), 698; *Dille v. White,* 10 L. R. A. (N. S.), 510, 536. The drawer is not discharged when the check is certified by his procurement even if it is certified at the request of the payee. Brannan's Negotiable Instruments Law, 898, sec. 188.

The evidence may be considered as tending to establish the fact that Bishop and the company for whom he acted acquiesced in the return of the check and accepted the amount of it as a credit on the drawer's bank account. The drawer therefore was not released from liability; he cannot accept the benefit and reject the burden. Whether under these circumstances Windsor was discharged depends upon his relation to the drawer. He testified as follows: "I paid the money over to Bishop in the presence of Mr. Holman. I had a bank account with the Atlantic Bank & Trust Company at that time. I might have given my check but I didn't. Mr. Holman asked for a check and he then wanted it certified, so I gave the money to Bishop and he gave him a check and had it certified. Although I was doing business with the Atlantic Bank & Trust Company, and had money there, instead of drawing my check on that bank, I turned the money over to Bishop and asked him to settle the bill, so he did it. I told John F. Bishop to settle the note. There were present, myself, Mr. Holman and Mr. Bishop; all three of us. I paid over to Mr. Bishop $438, and Mr. Bishop then issued the check offered in evidence." His answer to the following question, also, may be considered: "When the check was made out on 10 April, you procured Mr. Bishop to handle the transaction for you, to represent you, and to close the transaction for you instead of closing it with Mr. Holman, who was there present?" He answered, "I told him to go ahead and close it. We were both there together. I could have settled direct with Mr. Holman but I would rather Mr. Bishop would do it for me. He had done it all the way through when it was necessary. I could have taken my money to the bank, deposited it and drawn my own check and delivered it to Holman."

There was evidence that the plaintiff never authorized Bishop or The Motor Company to collect any money from Windsor, and that Bishop's connection with the transaction ceased, except as to his personal liability, when the note and contract were assigned to the plaintiff. It was contended by the plaintiff that Windsor constituted Bishop or The Motor

Company his agent to make payment and to settle the controversy with the plaintiff and that any negotiation between the plaintiff and Bishop or The Motor Company was also the negotiation of Windsor. We cannot agree with the appellees that there is no evidence to sustain this contention. If Windsor saw fit to negotiate a settlement with the plaintiff through the agency of Bishop or The Motor Company instead of communicating directly with the plaintiff the scope of the authority thus conferred should be submitted to and determined by the jury. Other instructions present serious questions which need not be considered.

New trial.